UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| **DENISE MARIE LAROSE,** | ) |
| Plaintiff, | ) Case No. EDCV 09-01573 AJW |
| v. | ) MEMORANDUM OF DECISION |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of the Social Security Administration,** | ) |
| Defendant. | ) |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed her benefits applications on June 6, 2007. She alleged that she had been disabled since March 3, 2007 due to a pinched nerve in the neck, degenerative disc disease, and depression. [JS 1-2; Administrative Record ("AR") 121]. In a written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge ("ALJ") concluded that plaintiff was not disabled. [AR 9-16]. The ALJ found that plaintiff had severe degenerative disc disease of the lumbar spine, status post laminectomy. [AR 11]. The ALJ determined, however, that plaintiff retained the residual functional

capacity ("RFC") to perform a limited range of light work. [AR 12]. The ALJ concluded that plaintiff was not disabled because her RFC did not preclude her from performing work that exists in significant numbers in the national economy. [JS 2; AR 19].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Treating source opinions**

Plaintiff contends that the ALJ erred in rejecting the opinions of plaintiff's treating physicians regarding her inability to work and her functional limitations.[See JS 4-11].

Where the opinion of a treating or examining physician is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-49 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

Plaintiff alleged that she stopped working in March 2007 due to back pain. On March 19, 2007, she told Peter Hsien Cheng, D.O., that she had an epidural steroid injection in August 2006 that gave her

good relief from back pain, but that the pain had returned and was "very severe." [AR 283]. Dr. Cheng diagnosed degeneration of the lumbar intervertebral disc, spinal stenosis[1] of lumbar region, disorder of lumbar intervertebral disc, and spondylosis[2] of lumbar joint. [AR 284]. He administered an epidural steroid injection. Plaintiff also was prescribed acupuncture. [AR 281-290].

In April 2007, plaintiff told another Kaiser Permanente physician, Hung-Ping Pai, D.O., that she continued to have back pain. Dr. Pai gave her diagnoses of degeneration of lumbar intervertebral disc and sciatica. He prescribed medication and said that plaintiff was "off work from 4/13 for 30 days." [AR 291].

On May 4, 2007, plaintiff followed up with Catherine Potyondy, M.D., for complaints of ongoing pain. Dr. Potyondy diagnosed spondylosis of lumbar joint. She prescribed medication, ordered a lumbar spine MRI, and directed plaintiff to remain off work for 60 days, that is, until July 4, 2007. [AR 293]. Plaintiff's May 21, 2007 MRI showed a "far lateral disk herniation," but her symptoms appeared "to be more consistent with an S1 radiculopathy," although there was no evidence of S1 nerve root compression. [AR 299; see 295-297]. Plaintiff declined a suggested referral to the chronic pain center. [AR 300].

On September 25, 2007, Dr. Potyondy stated in a "Visit Verification Form" that plaintiff "was seen in this office. [She] has been ill and is unable to attend work from 8/31/2007 through 12/28/2007." [AR 212]. Dr. Potyondy subsequently authorized plaintiff to remain off work from December 28, 2007 through March 26, 2008 pending a possible selective nerve root block. [AR 315].

On December 4, 2007, plaintiff saw Chris We-Chung Tang, M.D., for a spine surgery consultation. [AR 251]. She complained of back pain that was constant, worse with any activity, and better with sitting in her recliner. She said that her leg pain was worse with walking, standing, prolonged sitting, lying flat, and better with sitting in her recliner. [AR 251]. Plaintiff reported that acupuncture had been of some help, physical therapy and medications had provided minimal relief, and epidural steroid injections had not

---

[1] "Spinal stenosis is narrowing of the spinal cord that causes pressure on the spinal cord, or narrowing of the openings (called neural foramina) where spinal nerves leave the spinal column." See National Institutes of Health, MedlinePlus, *http://www.nlm.nih.gov/medlineplus/ency/article/000441.htm* (last visited October 20, 2010).

[2] "Spondylosis" refers to stiffening or fixation of the vertebra and "often [is] applied nonspecifically to any lesion of the spine of a degenerative nature." Stedman's Medical Dictionary spondylosis (27th ed. 2000).

helped. She said that she would "rather be paralyzed than to continue to live with this." [AR 251].

Dr. Tang's impression was degenerative disc disease with left far lateral L 4/5 herniated nucleus pulposus and neural foraminal stenosis. [AR 254]. He discussed with plaintiff the options of further conservative treatment (more physical therapy, medications, activity modification, and epidural steroid injections) "versus surgery (L L4/5 diskectomy, foraminotomy, far lateral approach)." [AR 342]. Dr. Tang wrote that while plaintiff's left leg symptoms were likely due to left L 4/5 neural foraminal stenosis , she had "some symptoms that are not explainable with the L4 root distribution," and he doubted that surgery to relieve her left leg symptoms would eliminate all of her symptoms. Dr. Tang said that "the likely source" of plaintiff's lower back pain was "multifactorial," including degenerative disc disease of the lumbar spine and "myofascial etiology." [AR 254]. The risks and possible complications of surgery were discussed. Dr. Tang wrote that he would like plaintiff to "get a[n] L L4/5 transforaminal nerve root block for both therapeutic and diagnostic purpose[s]," and he instructed her to return to see him after obtaining the nerve root block. [AR 254-255].

On February 5, 2008, plaintiff saw Dr. Cheng to discuss a selective nerve root block "for intractable low back pain and sciatica" with spinal stenosis. [AR 317]. Plaintiff underwent another MRI, followed by left and right transforaminal injections for selective nerve root blocks on March 24, 2008 and April 30, 2008, respectively. [AR 322-334].

Plaintiff followed up with Dr. Tang on June 19, 2008. Dr. Tang diagnosed herniation of lumbar intervertebral disc with radiculopathy. [AR 343]. Plaintiff was "aware [that] the surgery will have limited chance of giving her limited relief of her symptoms." [AR 342].

A few days later, plaintiff saw Dr. Pai. In the history section of his report, Dr. Pai wrote that plaintiff "is still not able to work. She is going to have surgery in the near future." [AR 344]. Dr. Pai's diagnosis was spondylosis of lumbar joint. He prescribed pain medication and wrote "extend FMLA, off work till end of September." [AR 344-345].

Dr. Tang performed an L4/5 decompression, midcrodiscectomy[3], and foraminotomy[4] on August 11,

---

[3] Diskectomy or discectomy is a surgery to remove all or part of a herniated intervertebral disc. See National Institutes of Health, MedlinePlus, *http://www.nlm.nih.gov/medlineplus/ency/article/007250.htm* (last visited October 20, 2010).

4

2008. [AR 375]. During a postoperative visit on September 2, 2008, plaintiff said that she was getting cramping in her left ankle and foot. She was taking pain medication mostly at night. She was advised to return in 3 to 4 weeks, continue her walking program, advance activities as tolerated, and avoid bending, lifting, and twisting. [AR 375].

Plaintiff saw Dr. Potyondy on November 3, 2008. Plaintiff's diagnoses were lumbosacral radiculitis, post-laminectomy syndrome[5], spondylosis of lumbar joint, degeneration of lumbar intervertebral disc, and spinal stenosis of lumbar region. Plaintiff was prescribed nabumetone, gabapentin, endocet, and tramadol for pain, and lorazepam for anxiety. [AR 379]. Dr. Potyondy wrote that plaintiff "can participate in a modified work program starting 11/3/2008 and continuing through 11/3/2009. [¶] If modified work is not available, [plaintiff] is unable to work for this time period." [AR 378]. Dr. Potyondy said that plaintiff was precluded from any bending, twisting, squatting, or climbing ladders. She said that during one work shift, plaintiff could lift and carry up to ten pounds occasionally (up to 25% of shift), stand for 30 minutes total, walk for 30 minutes total, and sit for 3 to 4 hours total. Under "other restrictions," Dr. Potyondy wrote: "These are permanent restrictions." [AR 378].

The ALJ rejected the "off work orders signed by various doctors" along with the functional restrictions described by Dr. Potyondy. [AR 17]. The ALJ explained that those opinions "are not binding on the Social Security Administration," "use their own criteria, and are inconsistent with the medical evidence summarized herein and the testimony of the vocational expert. Moreover, the record does not establish any 12 month period of time during the relevant time frame that the claimant could not perform the light residual functional capacity found herein." [AR 17].

The ALJ also partly rejected the opinions of the consultative examining orthopedist and the non-

---

[4] Foraminotomy is surgery that widens the opening in the spine where nerve roots leave the spinal column, known as the neural foramen. See MedlinePlus, National Institutes of Health, *http://www.nlm.nih.gov/medlineplus/ency/article/007390.htm* (last visited October 20, 2010).

[5] Post-laminectomy syndrome, also known as "failed back surgery syndrome" or "post discotomy syndrome," refers to persistent pain or other symptoms in patients following spinal surgery. See Juergen Kraemer et al., Intervertebral Disk Diseases: Causes, Diagnosis, Treatment and Prophylaxis, 286-289 (3d ed. 2009).

examining state agency physicians. Those doctors opined that plaintiff could perform medium work, but because they did not take into account plaintiff's subsequent MRI results and back surgery, the ALJ gave plaintiff a more restrictive RFC than they did. [See AR 15-16].

A treating physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate issue of disability." Tonapetyan, 242 F.3d at 1148. When, however, "there is a conflict between the opinions of a treating physician and an examining physician, as here, the ALJ may disregard the opinion of the treating physician only if he sets forth 'specific and legitimate reasons supported by substantial evidence in the record for doing so.'" Tonapetyan, 242 F.3d at 1148 (quoting Lester, 81 F.3d at 830).

The ALJ's reasons for rejecting the "off work" orders are specific, legitimate, and supported by the record. The context in which the "off work" orders were issued suggests that plaintiff's doctors were only considering the narrow issue of whether plaintiff was presently able to return to her job as a postal worker. For example, Dr. Pai wrote that plaintiff requested "extension off work and consider disability. She does not think she can work in the postal office anymore." [AR 290].

To qualify for social security disability benefits, plaintiff must do more than show that she cannot return to her past relevant work. Rather, she must establish an inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less that 12 months." 42 U.S.C. § 423(d)(1)(A). The disabling impairment must be so severe that, considering age, education, and work experience, plaintiff cannot engage in any kind of substantial gainful work that exists in the national economy. See 42 U.S.C. § 423(d)(2)(A). Because the criteria plaintiff's doctors applied for issuing "off work" orders are not defined anywhere in the record (and are not susceptible to being established by judicial notice), the ALJ permissibly concluded that they do not support the inference that plaintiff was unable to perform any substantial gainful activity for a continuous twelve-month period.

Dr. Potyondy's functional assessment is qualitatively different from the conclusory "off work" orders. Dr. Potyondy assessed functional limitations in plaintiff's ability to lift, carry, sit, stand, walk, bend, twist, and squat in a manner consistent with residual functional capacity assessments made under the Social Security Act. Thus, the question whether she applied different criteria is moot.

      The ALJ also asserted that Dr. Potyondy's assessment "is not supported by the medical evidence" because plaintiff is "neurologically intact," has degenerative changes in her spine "consistent with her age," and has "no evidence of atrophy." [AR 15]. Those are not legitimate reasons for rejecting Dr. Potyondy's opinion. For one thing, the ALJ may not "substitute his own layman's opinion for the findings and opinion of a physician . . . ." Gonzalez Perez v. Sec'y of Health & Human Servs., 812 F.2d 747, 749 (1st Cir. 1987); see Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir.1975) (holding that the ALJ, who was not a medical expert, erred in making his own assessment of the claimant's medical condition); Van Horn v. Schweiker, 717 F.2d 871, 874 (3d Cir.1983) (stating that "an ALJ is not free to set his own expertise against that of physicians who present competent medical evidence") (citations omitted).

      Furthermore, the ALJ's assertion that plaintiff has only age-related degenerative changes and no evidence of neurological deficits or atrophy ignores or omits contrary evidence in the record, such as positive neurological findings (antalgic gait, tingling, numbness, positive straight leg raising test, and diminished sensation), physical examination findings (tenderness to palpation and range of motion limitations), and MRI and x-ray findings showing neural foraminal narrowing with nerve impingement, degenerative disc disease, and disc herniation. [See, e.g., AR 253-254, 282, 290, 295, 314, 320, 324-325, 344]. See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.1984) (holding that it was error for an ALJ to ignore competent evidence in the record that contradicted his or her conclusions); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (stating that an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence").

      In addition, Dr. Potyondy's interpretation of the medical evidence is entitled to more weight than those of the non-treating physicians (and certainly those of the ALJ himself). The ALJ "is required to give weight not only to the treating physician's clinical findings and interpretation of test results, but also to his subjective judgments. . . . The treating physician's continuing relationship with the claimant makes him [or her] especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." Lester, 81 F.3d at 832-833; see Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (explaining that "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual") (quoting Smolen v. Chater,

80 F.3d 1273, 1285 (9th Cir. 1996) and citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188); see generally 20 C.F.R. §§ 404.1502, 404.1527(d)(2), 416.902, 416.927(d)(2) (explaining the standards guiding evaluation of medical opinions).

Plaintiff's medical records contain clinical findings, objective data, and numerous diagnoses of spinal disorders. Moreover, there was consensus among plaintiff's treating physicians that her subjective and objective presentation warranted progressively more aggressive intervention, culminating in surgery, but that surgery might not resolve her symptoms, and could even worsen them. Given this evidence, the ALJ could not legitimately reject Dr. Potyondy's functional assessment for lack of supporting medical evidence. Cf. Edlund, 253 F.3d at 1155-1157 (upholding the ALJ's rejection of a treating physician's opinion that the claimant had a disabling herniated disc where: (1) the record lacked objective clinical or laboratory findings indicative of disc herniation; (2) the diagnosis of a herniated disc was conditioned on correlation by an MRI study, which was not performed; (3) numerous other examining physicians found little objective evidence of a serious physical impairment; and (4) the treating physician was unaware that the claimant likely exaggerated his pain complaints to feed an addiction to narcotics).

Furthermore, the ALJ's reliance on the testimony of the vocational expert to reject Dr. Potyondy's opinion is misplaced. A treating physician is competent to render an opinion about a claimant's functional restrictions. See 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (defining medical opinions as statements from "acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis, and prognosis, what you can still do despite impairment(s), and your physical and mental restrictions."). The vocational expert's role is to classify a claimant's past work, or to identify jobs that are within a claimant's RFC as formulated by the ALJ based on the record. See 20 C.F.R. §§ 404.1566(e), 416.966(e); SSR 00-4p, 2000 WL 1898704, at *2. The ALJ cannot rely on the vocational expert's testimony to refute Dr. Potyondy's medical opinion about plaintiff's functional restrictions.

The ALJ failed to articulate specific, legitimate reasons based on substantial evidence for rejecting Dr. Potyondy's functional assessment. Accordingly, the ALJ committed reversible error.

**Plaintiff's subjective testimony**

Plaintiff contends that the ALJ provided legally insufficient reasons for rejecting the alleged severity of her subjective complaints. [JS 11-19].

8

If the record contains objective evidence of an underlying physical or mental impairment that is reasonably likely to be the source of a claimant's subjective symptoms, the ALJ is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear, and convincing reasons for rejecting a claimant's subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Moisa, 367 F.3d at 885. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff testified during the hearing in February 2009 that surgery had alleviated her left leg pain, but that she still had back pain, numbness in both legs and feet, weakness and cramping in her ankles, and had developed pain in her right leg, which was starting to feel like her left leg felt before surgery. Plaintiff testified that she was always uncomfortable, could not sit comfortably, could stand for two or three hours total in a work day, and spent most of the day lying down. [AR 32-41, 45-47]. She testified that she had discontinued physical therapy on her doctor's orders because she felt "pinching" on her right side, and that her doctors told her to "pain manage." [AR 38]. Plaintiff said that her doctors were talking about performing a spinal fusion within the next two years. [AR 29, 39]. The ALJ found that plaintiff was "generally credible," but he concluded that "the objective records do not support [her] allegations to the extent she has alleged." [AR 18]. The ALJ's selective reliance on objective evidence supporting his finding of non-disability undermines the legitimacy of his negative credibility assessment.

The ALJ also disbelieved plaintiff's subjective complaints because plaintiff said that she occasionally used a wheelchair when none had been prescribed; watched, and was able to pay attention to, up to eight hours of television daily; drove a car; went shopping ("but usually takes someone with her to help"); slept on a couch at her son's or her father's house; made easy food and snacks; dressed and bathed

herself; did a little light cleaning, such as washing dishes; walked; and swam.[6] [AR 16; see AR 24-48, 220].

Standing alone, plaintiff's ability to perform this limited range of daily activities is not a valid reason for rejecting her subjective complaints of back and leg pain, numbness, weakness, and cramping. Similarly, the fact that she is not prescribed an assistive device to ambulate is not dispositive. The Ninth Circuit has explained that

> the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled. In addition, activities such as walking in the mall and swimming are not necessarily transferable to the work setting with regard to the impact of pain. A patient may do these activities despite pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved.

Vertigan v. Halter, 260 F.3d 1044, 1049-1050 (9th Cir. 2001) (internal quotation marks omitted) (holding that the ALJ erred in relying on the claimant's testimony that she was able to go grocery shopping with assistance, walk approximately an hour in the malls, get together with her friends, play cards, swim, watch television, read, and exercise at home as a basis for disbelieving the claimant's subjective symptom testimony because those activities did not "consume a substantial part of" her day).

Accordingly, the ALJ's credibility finding is not supported by specific, legitimate, and convincing reasons based on substantial evidence in the record.

**Lay witness statements**

Plaintiff contends that the ALJ articulated legally insufficient reasons for rejecting statements made by lay witness Celeste Larose, plaintiff's sister. [JS 12-13].

Ms. Larose, who said that she lived in the same apartment complex as plaintiff, completed a third-

---

[6] The psychiatric consultative examiner, whose report the ALJ cited, said that plaintiff reported that her "[o]utside activities include some walking, "a little" [sic], and she says she swims in the pool, although she hurts more when she gets out of the pool." [AR 220].

party report describing plaintiff's activities and limitations. [AR 136-143]. Ms. Larose's account was consistent with plaintiff's written statements and testimony. [See AR 24-48, 128-135, 220].

While the ALJ cannot disregard lay testimony regarding a claimant's ability to work without comment, the ALJ may reject such testimony by providing "reasons that are germane to each witness." Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.1993)). Germane reasons for rejecting a lay witness's testimony include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); Greger, 464 F.3d at 971; Bayliss, 427 F.3d at 1218.

After summarizing Ms. Larose's report, the ALJ said that it was

> interesting, but it is not medical evidence, and it does not justify any greater limitations than those found herein. Although Ms. Larose's opinion appears to be sincere and supports the claimant's assertions, it is not supported by objective evidence. There is no evidence that the claimant requires a wheelchair or motorized car to navigate. There is no justification for the idle lifestyle the sister has described. While the claimant has indicated she continues to have back pain despite surgery, the physical examinations show the claimant made a good recovery. Therefore, the undersigned does not give great weight to the statements made by the claimant's sister.

[AR 17-18].

The ALJ may not disregard Ms. Larose's lay testimony solely because it is "not medical evidence" or is not corroborated by the objective medical evidence. Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) (holding that where the ALJ found a lay witness "credible in her observations of [the claimant's] activities,. . . the ALJ should not have discredited her testimony on the basis of its relevance or irrelevance to medical conclusions"); see 20 C.F.R. § 404.1513(d) (providing that lay witness testimony may be introduced "to show the severity of [the claimant's] impairment(s) and how it affects [his] ability to work"); Smolen, 80 F.3d at 1289 ("The rejection of the testimony of [the claimant's] family members because [the claimant's] medical records did not corroborate her fatigue and pain violates SSR 88-13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are unsupported by

her medical records."); Dodrill, 12 F.3d at 918-919 ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition.").

As for the ALJ's observation plaintiff made a "good recovery" after surgery, Dr. Potyondy concluded otherwise. Two months after plaintiff's September 2008 surgery, Dr. Potyondy gave plaintiff a diagnosis of post-laminectomy syndrome and assessed significant work-related functional restrictions. [AR 378]. In sum, the ALJ failed to articulate germane reasons for rejecting Ms. Larose's report.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has adopted the following test to determine whether evidence should be credited and the case remanded for an award of benefits:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (quoting Smolen, 80 F.3d 1273, 1292 (9th Cir. 1996)).

On remand, the ALJ must adopt Dr. Potyondy's improperly discredited opinion. The ALJ stated on the record during the hearing that plaintiff would be disabled under the grids if Dr. Potyondy's November 2008 assessment were accepted. [AR 57]. However, there is some ambiguity in Dr. Potyondy's opinion as to the duration of the limitations she assessed. On the one hand, she indicates that plaintiff has functional restrictions that require work modifications for one year, until November 3, 2009. On the other hand, she states that "[t]hese restrictions are permanent," which appears to be inconsistent with the projected one-year duration of the modified work requirement. [AR 378].

Accordingly, a remand for further administrative proceedings is the appropriate remedy. On remand, the ALJ should give plaintiff the opportunity for a new hearing and issue a new hearing decision with appropriate findings. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003)(remanding for

further administrative proceedings where there were outstanding issues to resolve, including the timing and duration of the claimant's disability).

## Conclusion

The Commissioner's decision is not supported by substantial evidence and contains legal error. Therefore, the Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

October 25, 2010

_____
ANDREW J. WISTRICH
United States Magistrate Judge